IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division



| | | |
|---|---|---|
| APPLAUSE PRODUCTION GROUP, LLC, | * | |
| Plaintiff, | * | Case No.: GJH-16-1463 |
| v. | * | |
| SHOWTIME EVENTS INC., *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Plaintiff Applause Production Group, LLC ("Applause" or "Plaintiff") brings this action against Defendants Showtime Events Inc. ("Showtime") and Amilcar Mendez (collectively, "Defendants"), alleging trademark infringement and false designation of origin in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and 1125(a). Now pending before the Court is Plaintiff's Renewed Motion for Default Judgment, ECF No. 18. No hearing is necessary. Loc. R. 105.6 (D. Md. 2016). For the following reasons, Plaintiff's Renewed Motion for Default Judgment is granted, in part, and denied, in part.

### I. BACKGROUND

#### A. Factual Background[1]

Applause is an entertainment business that provides services such as event production, audio/visual services, themed décor and event management. ECF No. 17 ¶ 8. Applause owns Federal Trademark Registration No. 3,756,459 for the "Showtime Events" trademark ("the '459

---

[1] Unless stated otherwise, the facts are taken from the Amended Complaint, ECF No. 17, and assumed to be true.

1

trademark") and conducts business under that name. *Id.* at 1 & ¶ 9; *see also* ECF No. 1-1.[2] The Showtime Events trademark has been in exclusive and continuous use by Plaintiff since January 1, 1996. ECF No. 17 ¶ 10. Applause currently has offices in North Carolina, Michigan, Florida and Washington, D.C. *Id.* ¶ 8. Applause's customer base includes clients in the Washington, D.C. metropolitan area. *Id.* ¶ 13. Since 2000, Applause has bid on at least 20 projects in the area, most recently in August 2016, and has performed jobs worth over $100,000. *Id.* Applause has expended substantial money and resources in advertising and promoting their mark throughout the United States, resulting in a mark that is "inherently distinctive" and which has "acquired distinctiveness among relevant purchasers." *Id.* ¶ 18.

Defendant Showtime Events Inc. is a Maryland corporation with its principal place of business in Hyattsville, Maryland and Defendant Mendez, a resident of the State of Maryland, is an officer and managing member of Showtime Events Inc. *Id.* ¶ 3. Defendants are also in the entertainment industry, promoting and selling event management services in the Washington, D.C. metropolitan area. *Id.* ¶ 30; *see also* ECF Nos. 1-4 & 1-7. Applause alleges that Showtime Events Inc. forfeited its corporate charter in or around 2012 and, since that time, Defendant Mendez has been operating the company as a sole proprietorship. ECF No. 17 ¶ 4.

On April 26, 2011, Defendants established a website, www.showtimeeventsinc.com, to promote their company. *Id.* ¶ 19; *see also* ECF No. 1-2. They also established and promoted their company using the names "Showtime Events" or "Showtime Events Inc." on various social media pages, such as Facebook, and event planning websites, such as Wedding Wire, the Knot, and Special Events. ECF No. 17 ¶¶ 19-23; *see also* ECF Nos. 1-3, 1-9, 1-10, 17-5. Plaintiff

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system. Plaintiff's Amended Complaint, ECF No. 17, incorporates by reference the exhibits attached to its original Complaint, ECF Nos. 1-1 through 1-13. *See* ECF No. 17 at 3 n.1 (citing Loc. R. 103.6(b) (D. Md. 2016)).

alleges that Defendants had actual knowledge of its Showtime Events trademark prior to establishing these websites and listings. ECF No. 17 ¶ 24.

On March 19, 2014, Applause notified Defendants of their infringing use of the Showtime Events mark and requested that they cease their use of the mark. *Id.* ¶ 35. Defendants allegedly refused and continued their use of the mark both in their business and on their website. *Id* ¶ 35. Plaintiff alleges that the Showtime Events mark, as used by Applause over the past twenty years, is "incontestable, distinctive and has acquired secondary meaning." *Id.* ¶ 28. Plaintiff further alleges that Defendants' unauthorized use of their mark is likely to cause confusion among potential customers by creating the impression that "Applause itself has offered or endorsed Plaintiff's services." *Id.* ¶ 32. Plaintiff alleges that Defendants have defaulted on their credit accounts, and, as a result, various credit agencies are contacting Applause, causing actual confusion tarnishing Applause's image. *Id.* ¶ 34. Such confusion has the "potential to hurt the Showtime Events brand and business greatly if not addressed." *Id.*

Plaintiff alleges that this infringement is willful and "designed to specifically trade and capitalize upon the substantial goodwill of Applause's trademark," *id.* ¶ 35, and that Defendants advertise several event planning websites on their website, such as Special Events, that have featured Applause numerous times. *Id.* ¶ 36. Plaintiff alleges that Defendants' conduct has caused them harm through lost sales and profits and forced them to incur the expenses associated with attempting to halt Defendants' actions. *Id.* ¶ 39.

### B. Procedural Background

On May 16, 2016, Plaintiff filed the instant case. Defendants were served via a private process server on June 10, 2016. ECF Nos. 7 & 8. Because the Defendants had not filed a response to the Complaint, Plaintiff filed a Motion for Default Judgment on September 16, 2016,

ECF No. 13, and an Order of Default was entered by the Clerk of the Court against Defendants on October 6, 2016. ECF No. 14.

On May 4, 2017, the Court denied Plaintiff's Motion for Default Judgment but suggested that Plaintiff could file an amended complaint and a renewed motion. ECF Nos. 15, 16. Plaintiff filed an Amended Complaint on May 25, 2017, providing additional facts in support of its trademark infringement count and removing counts of unfair competition and cybersquatting, consistent with the Court's Memorandum Opinion, ECF No. 15. *See* ECF No. 17. Plaintiff now renews its Motion for Default Judgment. ECF No. 18.

## II. STANDARD OF REVIEW

"A defendant's default does not automatically entitle the plaintiff to entry of a default judgment: rather, that decision is left to the discretion of the court." *Choice Hotels Intern., Inc. v. Savannah Shakti Carp.*, No. DKC-11-0438, 2011 WL 5118328, at *2 (D. Md. Oct. 25, 2011) (citing *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002)). Although "[t]he Fourth Circuit has a 'strong policy' that 'cases be decided on their merits,'" *id.* (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir.1993)), "default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party[.]" *Id.* (citing *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)). "Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422. When considering a Motion for Default Judgment, the Court "must [then] determine whether [those] allegations . . . support the relief sought in th[e] action." *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration & Painting Co.*, 919 F. Supp. 2d 680, 685 (D. Md. 2013) (citation and internal quotation marks omitted).

## III. DISCUSSION

### A. Trademark Infringement

Plaintiff renews its efforts to seek default judgment on its claim that Defendants' use of the Showtime Events mark infringes on its trademark under 15 U.S.C. § 1114(1)(a) and is a false designation of origin under 15 U.S.C. § 1125.[3] "To prove trademark infringement, a plaintiff must show both that it has a valid, protectable trademark and that the defendant's use of a 'reproduction, counterfeit, copy, or colorable imitation [of the mark],' 15 U.S.C. § 1114(1), creates a likelihood of confusion."[4] *Petro Stopping Centers, L.P. v. James River Petroleum, Inc.*, 130 F.3d 88, 91 (4th Cir. 1997) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 930 (4th Cir. 1995)). The mere use of a trademark is insufficient to establish infringement; instead, the key inquiry is the likelihood of confusion. *See What-A-Burger Of Virginia, Inc. v. Whataburger, Inc. Of Corpus Christi, Texas*, 357 F.3d 441, 450 (4th Cir. 2004). To determine if a likelihood of confusion exists, courts in this district generally look to certain factors derived principally from *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984): (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; and (7) actual confusion. "Not all of these factors are of equal importance, 'nor are they always relevant in any

---

[3] In consolidating Plaintiff's initial claims under the Lanham Act, the Court previously stated that Plaintiff's claim of unfair competition was more properly construed as a claim for false designation of origin. ECF No. 15 at 5 n. 5. Plaintiff's one-count Amended Complaint, ECF No. 17, now includes elements of false designation of origin as a part of its trademark infringement count. "[T]he test of liability for a false designation of origin is the same 'likelihood of confusion' analysis arising in a traditional trademark infringement claim." ECF No. 15 at 5 n. 5 (internal citation omitted).

[4] As an initial matter, the Court noted in ruling on Plaintiff's first Motion for Default Judgment that Plaintiff's certificate of registration from the U.S. Patent and Trademark Office provides prima facie evidence of the validity, ownership, and exclusive right to use the mark. ECF No. 15 at 6 (citing *U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002)).

5

given case.'" *CareFirst of Maryland, Inc. v. First Care, P.C.*, 434 F.3d 263, 268 (4th Cir. 2006) (citing *Anheuser-Busch v. L. & L. Wings, Inc.*, 962 F.2d 316, 320 (4th Cir. 1992)).

In denying Plaintiff's first Motion for Default Judgment, the Court focused on the use of the mark in the marketplace in which both parties operate. *See* ECF No. 15 at 7 (citing *CareFirst of Maryland, Inc.*, 434 F.3d at 267 ("[i]n conducting the likelihood-of-confusion analysis, a court . . . look[s] to how the two parties actually use their marks in the marketplace to determine whether the defendant's use is likely to cause confusion") (internal citations and quotations omitted)). Because the facts alleged in the Complaint suggested that the parties operated within separate and distinct geographic areas, *see* ECF No. 15 at 7 (noting that Plaintiff made no "specific allegations related to current or future activity in Defendants' marketplace"), the Court denied Plaintiff's request for default judgment but granted Plaintiff leave to amend the Complaint and file a renewed Motion for Default Judgment provided that Plaintiff could show "concrete, impending plans for entry in Defendant's market" or additional evidence demonstrating likelihood of confusion. ECF No. 15 at 8–9 (citing 5 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 26:34 (4th ed., March 2017 update) and *What-A-Burger*, 357 F.3d at 451 ("The injunctive *remedy* does not ripen until the registrant shows a *likelihood of entry* into the territory in question.") (citation omitted) (emphasis in original)). Additionally, Plaintiff's original Complaint did not include facts showing actual confusion between both parties' use of the Showtime Events mark.

Plaintiff's Amended Complaint, ECF No. 17, now shows a likelihood of confusion amongst consumers in Defendant's market. *See Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 127 (4th Cir.1990) ("The ultimate question, for purposes of determining liability in trademark infringement actions, is whether there exists a likelihood that an appreciable number

of ordinarily prudent purchasers will be misled, or indeed simply confused, as to the source of the goods in question.") (citations and internal quotation marks omitted). Plaintiff has alleged that the parties use the same name to provide similar services. ECF No. 17 ¶¶ 8, 30. Plaintiff, through its Amended Complaint, establishes that, beyond mere *likelihood* of entry, it is has already entered the Washington, D.C. metropolitan area market for event production. Plaintiff has successfully solicited for work in the area and now has a satellite office in Washington, D.C. ECF No. 17 ¶¶ 8, 13. Plaintiff has also been featured on the website Special Events, which Defendants list as an affiliate "Event Site" on its website. ECF No. 17 ¶ 36; ECF No. 17-5. Finally, Plaintiff specifically alleges actual confusion between the parties, stating that various credit agencies are mistakenly contacting Applause in an effort to collect on Defendants' debts. ECF No 17 ¶ 34; *see CareFirst of Maryland, Inc.*, 434 F.3d at 268 ("evidence of actual confusion is often paramount in the likelihood-of-confusion analysis") (internal citation omitted). Therefore, Plaintiff has shown sufficient evidence demonstrating a likelihood of confusion warranting relief on its trademark infringement claim.

### B. Requested Relief

Plaintiff seeks injunctive relief, requesting that the Court enjoin Defendants and any affiliates from using the Showtime Events mark, award Plaintiff all profits of Defendants derived from the trademark infringement, treble damages, attorney's fees and costs, and transfer the www.showtimeeventsinc.com domain name to Plaintiff. ECF No. 18 at 15–16. Having found that Defendants' use of the Showtime Events mark infringes upon Plaintiff's trademark, Plaintiff is entitled to its requested injunctive relief. *See* 15 U.S.C. § 1116(a).

Plaintiff may also, "subject to the principles of equity, recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action," but such damages "shall

constitute compensation and not a penalty." 15 U.S.C. § 1117(a). Because the statue does not include guidance on the equitable principals a trial court must apply when making an award under § 1117(a), the Fourth Circuit has provided the following factors:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

*See Synergistic Intern., LLC v. Korman*, 470 F.3d 162, 174–75 (4th Cir. 2006) (citing *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 349 (5th Cir. 2002)). In considering the six factors above, an award of monetary damages to the Plaintiff would not be equitable.

First, as the Court has already concluded, "Plaintiff's allegations do not establish a bad faith intent to profit," ECF No. 15 at 13, and Plaintiff has not pled additional facts to suggest otherwise. *See Synergistic Intern., LLC*, 470 F.3d at 175 (interpreting the first factor as whether the defendant acted in bad faith). Second, Plaintiff does not allege, beyond broad and conclusory statements in its Amended Complaint, that Defendants' infringement has resulted in any actual lost sales or profits to it or increased sales or profits to the Defendants. Third, the injunction granted herein ensures that Defendants will no longer use the Showtime Events mark or confuse future consumers. *See id.* at 176 (citing *Minn. Pet Breeders, Inc. v. Schell & Kampeter, Inc.*, 41 F.3d 1242, 1247 (8th Cir.1994) (concluding that "an accounting will be denied with a trademark infringement action where an injunction will satisfy the equities of the case") (internal quotation marks omitted)). Fourth, Defendants began using their infringing domain name in 2011, at a time in which Plaintiff had already been operating in the Washington, D.C. metropolitan area, and this claim was not first asserted until 2016. ECF No. 17 ¶¶ 8, 19; *see also Synergistic Intern., LLC*, 470 F.3d at 176 ("A substantial delay between the commencement of infringement activities and the plaintiff seeking judicial relief should weigh against an award of damages."). Fifth, Plaintiff

8

provides no facts to suggest that assessing damages is necessary to make the misconduct unprofitable. *See id.* ("[the fifth factor] addresses the balance that a court should strike between a plaintiff's right to be compensated for the defendant's trademark infringement activities, and the statutory right of the defendant to not be assessed a penalty"). Sixth, and finally, Plaintiff provides no facts to suggest that Defendants have "palmed off," or misrepresented to the public that Defendants' product was really that of Applause. While Plaintiff and Defendants have advertised their services over the same geographic region and marketing platforms, there is no indication that Defendants have held themselves out as part of the Applause brand in order to lure customers to Defendants' website or social media pages. *See also id.* (citing *Tex. Pig Stands, Inc. v. Hard Rock Café Int'l, Inc.*, 951 F.2d 684, 695 (5th Cir.1992) ("palming off" did not occur when there was no basis for inferring that profits received by defendant were attributable to infringement)).

Beyond damages, 15 U.S.C. § 1117(a) also provides for reasonable attorney's fees in "exceptional cases." "Exceptional cases" for the purpose of attorney's fees arise when the defendants act in bad faith through malicious, fraudulent, willful or deliberate conduct. *See People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370 (4th Cir. 2001) (citing *Scotch Whisky Ass'n v. Majestic Distilling Co., Inc.*, 958 F.2d 594, 599 (4th Cir. 1991)). Because Plaintiff has not established that Defendants are acting in bad faith, an award of attorney's fees is not warranted.[5] For the same reason, Plaintiff is not entitled to a court order for a transfer of Defendants' domain name to Plaintiff. A court may transfer a domain name only when a person has acted with a bad faith intent to profit from a trademark under the Anti-Cybersquatting

---

[5] Moreover, while Plaintiff requests the Court to award reasonable costs and attorney's fees, Plaintiff makes no showing as to what those reasonable costs and fees should be.

9

Consumer Protection Act ("ACPA") amendments to the Lanham Act.[6] *Compare* 15 U.S.C. § 1125(d)(1)(A)(i) ("A person shall be liable in a civil action by the owner of a mark . . . if . . . that person has a bad faith intent to profit form that mark") *with* § 1125(d)(1)(C) ("In any civil action involving the registration, trafficking, or use of a domain name *under this paragraph*, a court may order the forfeiture or cancellation of the domain name or the transfer of the domain name to the owner of the mark) (emphasis added). Accordingly, Defendants are enjoined from using the Showtime Events mark only.

IV. **CONCLUSION**

For the foregoing reasons, Plaintiff's renewed Motion for Default Judgment, ECF No. 18, shall be granted, in part, and denied, in part. A separate Order follows.

Dated: October 13, 2017

GEORGE J. HAZEL
United States District Judge

---

[6] As detailed in this Court's May 4, 2017 Memorandum Opinion, Plaintiff's allegations fail to arise to a viable ACPA claim. ECF No. 15 at 9–13. Defendants are, however, enjoined from using the Showtime Events mark, including the associated domain name.

10